Perfection Plastics, Inc., Appellant, *v.* Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Employment Security, Appellee.

Argued February 5, 1974, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Charles L. Katz,* with him *Gerald J. St. John* and
*Schnader, Harrison, Segal & Lewis,* for appellant.

*Michael H. Chwastiak,* Assistant Attorney General,
for appellee.

OPINION BY JUDGE KRAMER, April 19, 1974:

This is an appeal filed by Perfection Plastics, Inc.
(Perfection) from an adjudication of the Bureau of
Employment Security (Bureau) of the Department of
Labor and Industry of the Commonwealth of Pennsyl-
vania dated July 25, 1973 denying Perfection's appli-
cation for a redetermination of its contribution rates
for the years 1971 and 1972.

Because the complicated facts of this case are per-
tinent to our holding, it is necessary to review them
in some detail. The plastics business in question was
initially purchased on April 1, 1947 from Advertising

Novelty Manufacturing Company, Inc., a Pennsylvania corporation, by Perfection Plastics Engineering Corporation (Perfection Engineering), also a Pennsylvania corporation. Upon notice of the transfer of business, Perfection Engineering was given a new employer account number. Perfection Engineering continued the business until it sold same on September 30, 1969 to Clo-tron Industries, Inc. (Clo-tron). Clo-tron did not make an application for a transfer of the experience record and reserve account balance of Perfection Engineering. Therefore, on September 30, 1969, Perfection Engineering's employer account number was deleted and a new account number was given to Clo-tron for the fourth calendar quarter of 1969. The rate assigned to Clo-tron was .027, which was the rate applied to all new employers for that quarter.

Clo-tron continued in business for nearly four months until January 20, 1970, at which time its employer account number was deleted because the Bureau was notified that Clo-tron had ceased to give employment in Pennsylvania. Clo-tron was adjudged a bankrupt on February 6, 1970 and its business was sold by the bankrupt's estate to Industrial Plastics Company, Inc. (Industrial Plastics), a Massachusetts corporation, on February 14, 1970.

Perfection, in its Employer's Initial Statement dated October 13, 1970, notified the Bureau that it was incorporated in Pennsylvania on February 12, 1970 with its common stock wholly owned by Industrial Plastics, that it was a new owner of the business from February 14, 1970, and that there was *no* predecessor employer account. As a result of this filing, the Bureau gave Perfection a new employer account number, effective February 14, 1970. Perfection was assigned a tax rate of .027, which was the rate applied to new employers for wages paid in the calendar year 1970.

Later, Perfection requested the Bureau to permit it to amend its Employer's Initial Statement (dated October 13, 1970) by applying for the transfer of the experience record of both Clo-tron and Perfection Engineering. The reason for the request was to reduce Perfection's contribution rate to .008, which was the rate paid by Perfection Engineering when it sold its business to Clo-tron. The Bureau denied Perfection's request for transfer of experience records but despite the denial, Perfection refused to pay its employment tax at the rate of .027 as a new employer and instead, paid at the rate of .008.

Thereafter, Perfection requested a review of the Bureau's rate determination and after hearing an adjudication was entered, dated December 15, 1971, denying Perfection's request for a transfer of Perfection Engineering's experience record and reserve account balance. On May 1, 1973, Perfection again requested the Bureau to convert its status from that of a new employer to that as a successor employer to the interest of Perfection Engineering. On May 23, 1973, the request was approved and Perfection was notified by letter that it would receive revised contribution rate notices for the years 1970, 1971 and 1972. The same letter gave notice to Perfection that its contribution rate for 1973 would remain at .040-2 unless Perfection submitted a remittance in payment of all amounts due to the second quarter of 1972 inclusive. The letter also notified Perfection that interest was accruing on all unpaid contributions at the rate of 1% per month and that a delinquency penalty would be charged for each delinquent quarter.

If Perfection's total employment tax liability from the date of purchase through the first quarter of 1973 is computed with the initial rate being the new employer's rate of .027, then Perfection would owe $20,241.39. As a result of the May 23, 1973 adjudication mentioned

above, which in effect converted Perfection's account to that as a successor in interest to Perfection Engineering, Perfection's total tax liability for the same period would amount to $16,486.93. During the period of time in question (date of purchase through the first quarter of 1973), Perfection paid only $6,839.03. If we accept the May 23, 1973 adjudication, then Perfection owes a balance of $9,647.90 plus interest and penalty. In August of 1973, Perfection sold its business equipment at private auction. However, an agreement was reached providing that the sum of $9,000.00 would be held in escrow by the Provident Trust Company in Philadelphia pending disposition of a landlord's claim for unpaid rent and the Bureau's claim for unpaid taxes. It would appear from the record that Perfection no longer employs persons in the Commonwealth.

On July 5, 1973, Perfection petitioned the Bureau for a redetermination of its 1971 and 1972 rates contending that the combined reserve experience should not include charges for payments made to employes of Perfection's predecessors without notice to Perfection. The total amount of such charges, paid subsequent to June of 1970, was $34,381.00. These charges caused Perfection's revised contribution rate to increase from .008 to .031 for 1971 and to .040 for 1972. On July 25, 1973, the Bureau denied Perfection's request for a redetermination of its contribution rate and Perfection filed an appeal from that decision to this Court on August 24, 1973.

Our scope of review in this case is governed by Section 510 of the Unemployment Compensation Law (hereinafter Act), Act of December 5, 1936, Second Ex. Sess., P. L. (1937) 2897, as amended, 43 P.S. §830, which states that in the absence of fraud the findings of the Board are conclusive if supported by substantial evidence and that in such a case we are confined to questions of law.

The Bureau, in its May 23, 1973 adjudication, does not explain in any way why it changed its December 15, 1971 determination. We are given no information concerning the basis for the decision on May 23, 1973 to approve the request for transfer of experience. The Bureau further complicates this matter by again changing its position in this appeal and arguing that the May 23, 1973 determination is void. The Bureau, in its brief and at argument, now contends that its adjudication of May 23, 1973 was illegal because it is not based upon and in conformance with the Act. It now contends that its determination of December 15, 1971, from which Perfection took no appeal, is the only binding adjudication and that we should therefore declare the May 23, 1973 adjudication void.

The immediate problem confronting us is whether the Bureau can raise the issue of the validity of its May 23, 1973 adjudication. The only matter raised in Perfection's appeal is the validity of the Bureau's determination of Perfection's contribution rate for 1971 and 1972. The only issues raised by the exceptions filed by Perfection in this appeal relate to the validity of the Bureau's adjudication of July 25, 1973. No appeal was ever taken from the May 23, 1973 adjudication and the issue of its validity has not been properly presented to this Court. Therefore, we will not discuss it in this opinion.

The only issue properly before this Court is whether the Bureau's July 25, 1973 adjudication is in error as a matter of law. In its appeal to this Court, Perfection filed exceptions in which it alleged that its contribution rate should be reduced because Perfection was never notified of payments made to the employes of Perfection's predecessors. Perfection contends in this appeal that we should not only reverse the Bureau, but also that we should remand this case back for further hearing and direct that in such hearing the Bureau

has the burden of proving the lawfulness of the payments to employes. Perfection admits that it does not come within the literal reading of the list of persons to whom notice must be given by the Bureau when payments are made to employes. *See* Section 501 of the Act, 43 P.S. §821. Perfection argues that it should have been given notice of such payments because the Bureau was aware of the fact that Perfection was the successor to both Clo-tron and Perfection Engineering. Perfection claims that as a matter of fairness and under principles of equity, it deserved notice of all payments which affected its contribution rate. Perfection's problem is that the statute does not require notice to a successor who has not received approval of the transfer of a predecessor's experience record and balance. Under the facts of this case, the Bureau was under no statutory duty to give notice to Perfection until at the earliest May 23, 1973. Prior to May 23, 1973, the payments had no effect on Perfection's contribution rate. Therefore, the Bureau did not commit an error of law in its July 25, 1973 adjudication denying Perfection's application for a redetermination of its 1971 and 1972 contribution rate.

From a practical standpoint, Perfection is no longer doing business in the Commonwealth of Pennsylvania. It is not known whether it has any assets from which the Bureau could collect any deficiency in excess of the $9,000.00 being held in escrow, but certainly under the facts of this case, it is entitled to at least that much. In any event, we affirm the July 25, 1973 adjudication of the Bureau denying Perfection's application for a redetermination of its contribution rates for the years 1971 and 1972. In conforming with Section 512 of the Act, 43 P.S. §832, we

ORDER

AND NOW, this 19th day of April, 1974, it is hereby ordered that the matter be remanded to the Unemploy-

ment Compensation Board of Review to issue a new order not inconsistent with the above-noted opinion, setting forth a statistical summation of the dollars due for the years involved and indicating the rate, the amount due by quarter and all interest and penalties.